**SO ORDERED.**

**SIGNED this 14 day of October, 2016.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:                                                        CASE NO. 16-01838-5-DMW

TELLORRIE I. BROWN
                                                              CHAPTER 13
        DEBTOR

ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN
AND ESTABLISHING VALUE OF PERSONAL PROPERTY

This matter comes before the court upon the Minutes of 341 Meeting and Motion for Confirmation of Plan ("Confirmation Motion") filed by Chapter 13 trustee Joseph A. Bledsoe III, Esq. ("Trustee") on May 25, 2016 and the Objection to Confirmation of Plan ("Objection") filed by 21st Mortgage Corporation ("21st Mortgage") on June 15, 2016. The court conducted a hearing ("Hearing") in New Bern, North Carolina on September 15, 2016. Ashley Baxter Curry, Esq. appeared for the Trustee, Christine M. Lamb, Esq. appeared for 21st Mortgage, and Ernest C. Richardson IV, Esq. appeared for Tellorrie I. Brown ("Debtor").

At the Hearing, the Debtor and Kenneth R. Wiggins ("Wiggins") testified on behalf of the Debtor. The court admitted Wiggins as an expert in personal property with general knowledge of manufactured home values, although not as a certified appraiser of manufactured homes. Walter Banks ("Banks") testified on behalf of 21st Mortgage, and the court admitted Banks as an expert

in the field of manufactured home valuations. Based upon the testimony, other evidence presented, filed case information, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. The Debtor filed a voluntary petition ("Petition") for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on April 7, 2016, and the court appointed the Trustee to administer the estate pursuant to 11 U.S.C. § 1302.

2. On or about June 8, 2008,[1] the Debtor and First Choice Homes entered into a Retail Installment Contract—Security Agreement ("Note") pursuant to which the Debtor purchased from First Choice Homes a 2008 Clayton Summit 70' x 32' Manufactured Home ("Collateral") for the purchase price of $73,500.00 plus title and fees. The Debtor made a cash down payment of $30,000.00 and financed the balance of $43,580.00 over 266 months with interest accruing at the rate of 10.03% per annum.

3. The Note, which was assigned by First Choice Homes to 21st Mortgage, grants the holder a security interest in the Collateral. 21st Mortgage properly perfected its security interest in the Collateral by noting its lien on the Collateral's certificate of title. The Note requires the Debtor to make monthly payments to 21st Mortgage in the amount of $409.02 for a period of 266 months, commencing July 15, 2008.

4. On April 20, 2016, 21st Mortgage filed a proof of claim which states that on the date of the Petition, the balance due under the Note was $39,359.91 ("21st Mortgage Claim"), and the Note was in default for five (5) payments, plus late fees, and minus a previous overage totaling $3,178.87.

---

[1] The Note appears to be undated on its face, and the court estimates the date of its execution based upon other evidence presented in the case.

5. The Collateral, which is generally described as a "double wide mobile home," serves as the Debtor's residence and is located upon real property ("Collateral Location") in Jones County which is owned by the Debtor's mother. The Collateral Location is within the rural township of Trenton, North Carolina which is near the city of New Bern, North Carolina.

6. The Debtor's Schedule A/B: Property filed with the Petition values the Collateral at $28,600.00.

7. On April 7, 2016, the Debtor filed a proposed Chapter 13 Plan ("Plan"). The Plan provides for the Debtor to make monthly payments to the Trustee in the amount of $696.00 for a period of 60 months. The Plan proposes that 21st Mortgage be allowed a secured claim in the amount of $28,600.00 plus interest accruing at the rate of 5.50% per annum to be paid through the Plan with monthly payments to 21st Mortgage in the amount of $546.29. The Plan proposes a 0% payout to general unsecured creditors. In the Confirmation Motion, the Trustee moves for confirmation of the Plan, with the 21st Mortgage Claim being bifurcated into a secured claim in the amount of $28,600.00 and an unsecured claim in the amount of $10,759.91.

8. In the Objection, 21st Mortgage resists the proposed treatment of its Claim and disputes the Debtor's valuation of the Collateral, contending that the fair market value of the Collateral is significantly higher than $28,600.00. 21st Mortgage requests the court to determine the value of the Collateral and 21st Mortgage's secured status pursuant to 11 U.S.C. § 506(a) and Rule 3012 of the Federal Rules of Bankruptcy Procedure.

9. The Debtor contends that the Collateral was not properly installed at the Collateral Location. The Debtor described various damage or disrepair to the Collateral including separation of the two sides, the top, and the bottom; separation of crown molding; cracks throughout the

structure; unlevel floors; damaged and irreplaceable kitchen faucets; and splintered steps. The Debtor had to replace most of the Collateral's original appliances due to damage by lightning.

10. The Plan's valuation of the Collateral was based upon Wiggins' written appraisal ("Wiggins Appraisal") of the Collateral dated March 15, 2016.[2] The Wiggins Appraisal, which includes photographs of the Collateral, describes the Collateral's condition as "poor not good" and estimates its value as between $26,600.00 and $28,600.00 ("Wiggins Valuation"). The Wiggins Valuation begins with an NADA[3] valuation of $35,393.00 ("Wiggins NADA Value")[4] for "average" condition. The Wiggins NADA Value assumes that the Collateral's dimensions are 28 feet wide x 60 feet long. Wiggins then assigned the following adjustments based upon his inspection of the Collateral and general knowledge of manufactured homes:

| | | |
|---|---:|---:|
| Wiggins NADA Value | | $ 35,393.00 |
| Less Repairs | | |
|     Re-leveling | $ 5,000.00 | |
|     Carpet replacement | 2,500.00 | |
|     Molding removal—repainting | 600.00 | |
|     Storm door replacement | 200.00 | |
|     Kitchen cabinet replacement | 1,000.00 | |
|     Replace steps in front & back | 250.00 | |
|     Door frame repair | 200.00 | |
| | | (9,750.00) |
| Plus Enhancements[5] | | |
|     Replacement refrigerator | 242.00 | |
|     Skirting (incomplete) | 300.00 | |
|     Location adjustment | 353.00 | |
| | | 895.00 |
| Total Wiggins Adjusted Value | | $ 26,538.00 |

---

[2] The Wiggins Appraisal was admitted into evidence as the Debtor's "Exhibit A."

[3] The National Automobile Dealers Association ("NADA") is a recognized trade group that publishes timely guidebooks estimating the value of various automobile or similar items including manufactured homes.

[4] A copy of an NADA Used Value Report reflecting the Wiggins NADA Value was admitted into evidence as 21st Mortgage's "Exhibit 2."

[5] At the Hearing, counsel for 21st Mortgage questioned Wiggins as to why these enhancements were seemingly deducted rather than added to the NADA Value, because the Wiggins Appraisal shows the figures as negative values. After further examination of the Wiggins Appraisal, the court finds that the Wiggins Appraisal was mathematically correct but incorrectly showed a "minus" next to the additions. The Total Wiggins Adjusted Value above correctly shows what Wiggins was attempting to reflect in his poorly proofread appraisal.

11. 21st Mortgage's dispute of the Plan's valuation of the Collateral is based upon Banks' written appraisal ("Banks Appraisal") of the Collateral dated July 11, 2016.[6] The Banks Appraisal, which includes numerous photographs of the Collateral, describes the Collateral's overall condition to be "good" and estimates the market value of the Collateral to be $50,200.00 ("Banks Valuation"). The Banks Valuation begins with a NADA value of $38,700.00 ("Banks NADA Value")[7] for "good" condition and assumes that the Collateral's dimensions are 30 feet wide x 66 feet long as actually measured by Banks.[8] Using a computerized computation based upon retail sales of manufactured homes near the Collateral Location, Banks assigned the following adjustments:

|  |  |  |
|---|---:|---:|
| Banks NADA Value |  | $ 38,700.00 |
| Less Cost of Repairs |  |  |
|     Pressure wash | $ 150.00 |  |
|     Repair siding | 150.00 |  |
|     Replace faucet | 100.00 |  |
|     Re-stain cabinets | 50.00 |  |
|     Re-stretch carpet | 75.00 |  |
|     Repair crown molding | 100.00 |  |
|     Re-level home | 500.00 |  |
|  |  | (1,125.00) |
| Plus Added Components |  |  |
|     Roofing | 911.00 |  |
|     Siding | 751.00 |  |
|     Dual-glazed windows | 592.00 |  |
|     Carpeting | 392.00 |  |
|     Full bathtub | 816.00 |  |
|     Fiberglass shower stall | 136.00 |  |
|     Fiberglass tub | 191.00 |  |
|     Garden tub | 226.00 |  |
|     Side-by-side refrigerator | 398.00 |  |
|     Ice maker | 66.00 |  |
|     Dishwasher | 177.00 |  |
|     Furnace | 228.00 |  |

---

[6] A copy of the Banks Appraisal was admitted into evidence as 21st Mortgage's "Exhibit 1."

[7] The Banks NADA Value includes a 101% location adjustment for the State of North Carolina.

[8] The dimensions measured by Banks are inconsistent with the dimensions of 70 feet long by 32 feet wide listed on the Note, but for the purposes of the valuation, Banks' actual measurements will be used. The size of 60 feet long x 28 feet wide used by Wiggins is a more significant deviation than the dimensions provided in the Note.

|  |  |  |
|---|---:|---:|
| Air conditioner ready furnace | 114.00 |  |
| Washer-dryer outlet | 76.00 |  |
| 150-200 amp. Electricity | 114.00 |  |
| 40 gallon water heater | 70.00 |  |
| Drapes/curtains | 242.00 |  |
| Fireplace | 762.00 |  |
| Smoke detector | 128.00 |  |
| Wind zone 2 construction | 1,042.00 |  |
|  |  | 7,432.00 |
| Plus Accessories |  |  |
| Central air conditioning | 846.00 |  |
| Porch/deck | 96.00 |  |
| Porch/deck steps | 202.00 |  |
| Block skirting | 4,000.00 |  |
|  |  | 5,144.00 |
| Total Banks Adjusted Value |  | $ 50,151.00[9] |

12.  On September 7, 2016, a new "2016 Clayton Double Wide Mobile Home" was listed for sale on Craigslist ("Craigslist Listing") for the purchase price of $45,500.00.[10]

**Conclusions of Law**

*Jurisdiction*

1.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(K) and (L). *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1693, 191 L. Ed. 2d 621 (2015) (holding that the confirmation process is a core proceeding, not the ruling on each specific plan); *In re Hoekstra*, 253 B.R. 193, 195 (Bankr. E.D. Va. 2000) (finding that a determination of a creditor's secured status under 11 U.S.C. § 506 is a core proceeding in which final judgments and orders may be entered by a bankruptcy judge).

2.  The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference

---

[9] The Banks Valuation of $50,200.00 is simply a rounding of this figure to the nearest hundreds.
[10] A copy of the Craigslist Listing was admitted into evidence as the Debtor's "Exhibit B."

entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

*Determination of Secured Status*

3.  The Code provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a). In Chapter 13 cases, this ability to "bifurcate" a secured creditor's claim is restricted when the collateral is real property that serves as the debtor's residence. 11 U.S.C. § 1322(b)(2) (stating that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence"). In such cases, the court shall confirm a proposed plan if, *inter alia*, "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [an allowed secured claim] is not less than the allowed amount of such claim . . . ." 11 U.S.C. § 1325(a)(5)(B)(ii). In this case, while the Collateral is the Debtor's residence, it is not real property; therefore, the Plan may bifurcate 21st Mortgage's Claim if the court determines that the value of the Collateral is less than the amount of the Claim.

4.  When considering valuations of manufactured homes or other motor vehicles, this district finds an NADA value to be a "'starting point' for use in determining the correct retail value of personal property for plan cram down purposes under 11 U.S.C. § 1325(a)(5)." *In re Hardy*, Case No. 15-05431-5-JNC, 2016 WL 3549078 at *2 (Bankr. E.D.N.C. June 21, 2016) (citing *In re Russell*, 211 B.R. 12 (Bankr. E.D.N.C. 1997)). That value "is subject to further adjustment

7

based upon evidence concerning the actual condition and need for repairs of the [property]." *Id.* (citing *In re Marshall*, 181 B.R. 599 (Bankr. N.D. Ala. 1995)).

5. The disparity between the Wiggins NADA Value and the Banks NADA Value is attributable the application of different dimensions for the Collateral. Unlike Wiggins, Banks performed a physical measurement of the Collateral and articulately explained to the court the proper procedure for measuring manufactured homes. The court finds the Banks NADA Value to be the more appropriate starting point for determination of the Collateral's value. The Debtor provided no plausible explanation for the substantially smaller dimensions used by Wiggins.

6. When appropriately valuing manufactured homes using the NADA, an appraiser begins with a standard "box" that is the basic unit and adds value for components and accessories and subtracts value for damage and needed repairs. The additions are similar to pricing a base model of a standard motor vehicle and increasing the price for luxury or sport package options such as a sunroof or four-wheel drive. The reductions are similar to decreasing that price for high mileage or body damage. It appears that Wiggins did not follow this logical approach to valuation. Instead, he relied on a more random and inconsistent valuation approach.

7. The court was impressed and persuaded by Banks' detailed testimony describing the methodology used in the Banks Appraisal and how each adjustment from the Banks NADA Value was determined. The Banks Valuation is far more accurate than the Wiggins Valuation. While Wiggins also made adjustments to the Wiggins NADA Value starting price, these adjustments were more general and subjective. Banks was by far the better prepared and more credible witness. Without a better correlation to the Collateral, the value of the property in the Craigslist Listing has little relevance and can hardly be considered for illustrative purposes.

8. Despite its initial adoption of the Banks Valuation, the court agrees with the Debtor and Wiggins that various repairs are needed to the Collateral. The court believes that the Costs of Repairs reflected in the Banks Valuation should be tripled from $1,125.00 to $3,375.00. The Banks Valuation already includes a deduction of $1,125.00 and should, therefore, be further reduced by the amount of $2,250.00.

9. The court also agrees with the Debtor's argument that while the Collateral constitutes personal property that is feasibly mobile, the rural Collateral Location negatively affects the Collateral's value. For this reason, the court will apply a five percent (5%) discount ("Location Discount") in its final valuation. The Location Discount also considers the cost of having workers travel to the Collateral Location to undertake the repairs.

10. The court concludes that the Collateral's value is as follows:

| | |
|---|---:|
| Banks Valuation | $ 50,200.00 |
| Less Additional Costs of Repair | (2,250.00) |
| Subtotal | 47,950.00 |
| Less Location Discount | (2,398.00) |
| Collateral Value | $ 45,552.00 |

*Confirmation of Plan*

11. The Collateral's value is greater than the amount of 21st Mortgage's Claim; therefore, the Claim must be treated as fully secured pursuant to 11 U.S.C. §§ 506(a) and 1325(a)(5)(B), and the Plan cannot be confirmed; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1. The value of the Collateral be, and hereby is, adjudicated to be $45,552.00;

2. Confirmation of the Plan be, and hereby is, denied without prejudice; and

9

3.  21st Mortgage's Claim be, and hereby is, adjudicated to be an allowed secured claim in the amount of $39,359.91 pursuant to 11 U.S.C. § 506(a), and the Debtor and the Trustee be, and hereby are, directed to amend the Plan accordingly.

**END OF DOCUMENT**